# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, <br><br> v. <br><br> **[1] RAFAEL CARBALLO-DIAZ,** <br> **[2] NATHANIEL HERNANDEZ-CLAUDIO,** Defendants. | **CRIMINAL NO. 23-441(GMM)** |

### SENTENCING MEMORANDUM OF THE UNITED STATES

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned attorneys, and very respectfully states and prays as follows:

**I.     Introduction**

On June 12, 2024, pursuant to separate Plea Agreements, Defendant [1] Rafael Carballo-Diaz and Defendant [2] Nathaniel Hernandez-Claudio entered a guilty plea as to Count One (1) of the Indictment in CR 23-441(GMM), which charged each of them with filling wetlands in violation of the Clean Water Act (33 U.S.C. §§ 1311(a) and 1319(c)(2)(A)). See Docket Nos. 35 and 36.

Each Plea Agreement was reached between the parties pursuant to Rule 11(c)(1)(A) & (B) and includes recommended sentencing guideline calculations and respective sentencing recommendations. Consistent with the Plea Agreements and as explained herein, the United States respectfully requests that the Honorable Court sentence Defendant [1] Rafael Carballo-Diaz to a term of twelve (12) months of imprisonment and sentence Defendant [2] Nathaniel Hernandez-Claudio to term of probation.

**II.     Factual Summary**

The Plea Agreements contains a stipulated statement of facts regarding the illegal conduct giving rise to Defendants' guilty pleas. See Docket No. 35, 36, p. 11-12.

In 2018, Carballo purchased a property to the Southwest of Camino del Indio in the Las Mareas area of Salinas, Puerto Rico ("the Property"). At the time he purchased the Property, it was primarily wetlands consisting of mangrove trees and open area that was occasionally partially submerged by the sea tides, with sold terrain extending approximately 100 feet from Camino del Indio. The Property was adjacent to, shared a border with, and extended into the Jobos Bay National Estuarine Research Reserve. Starting no later than July of 202, Carballo knowingly engaged in construction and land clearing activities in areas of the Property that were wetlands. Specifically, Carballo purchased truckloads of fill material from a quarry and a nearby vendor and directed the deposit of the fill material from the trucks onto the wetland areas of the Property. Carballo then installed at least six housing units and a pool on the Property, in the areas that were previously wetlands as well as areas that were originally solid terrain. Starting no later than September of 2021, Carballo engaged in sort-term rental of the housing units he had placed on the Property under the name "Cacique Beach Resort," a hospitality and guest house business. Depicted

below:



     Starting no later than September of 2021, Hernandez worked at the Cacique Beach Resort on the Property. While employed at Cacique Beach Resort, through his own actions and those of others, Hernandez knowingly engaged in construction and land clearing activities in the areas of the Property that were wetlands consisting of mangrove trees and open area that was occasionally partially submerged by the sea tides. Specifically, Hernandez received and paid for truckloads of fill material from a quarry and a nearby vendor, and directed the deposit of the fill material from the trucks onto the Property. These actions were taken on behalf of and for the benefit of Carballo. Examples of the fill material on the Property are below:

 

Neither of the defendants sought or received approval to fill the wetlands and at no point were either permitted to fill wetlands on or near the Property.

The environmental damage caused is clear from satellite images taken from 2018 through 2023.






### III.  **Count of Conviction**

Count One (1) sets forth a violation of the Clean Water Act (CWA). 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A). The CWA violation involved the destruction removal of protected mangrove wetlands, followed by filling and commercial use of the same area, all within and adjacent to the Jobos Bay National Estuarine Research Reserve (JBNERR). Docket No. 2.

The JBNERR is a NOAA-designated and funded wetland marine reserve in Salinas, Puerto Rico. It is one of 29 Estuarine Research Reserves in the United States—the only such reserve in the Caribbean ecosystem—and is a designated Marine Protected Area. The reserve consists of about 2,800 acres of mangrove wetlands, tidal flats, marine waters, coral beds, seagrass beds, and a small area of dry forest. Many rare and endangered species of flora and fauna reside in the JBNERR and it provides enumerable ecological services to Puerto Rico and the Caribbean. As part of the National Estuarine Research Reserve association, JBNERR is also a multi-use public resource that hosts long-term research projects, water quality monitoring, local

and international education programs, coastal stewardship programs, and recreation opportunities.

At that time Carballo took control of the Property, it primarily consisted of wetland mangrove forests. Thereafter, the defendants removed the mangrove wetlands and filled the area with quarried rock to stabilize the earth. Once the area was filled, Carballo installed an above-ground pool, multiple open-air structures with dining areas, a walking path to the bay, and at least six residences for rent: four mobile homes and two RVs. Records from AirBnB showed that Carballo was paid $58,954 in income from renting the properties between October 2021 and June 2023.

## IV. Guideline Calculation & Recommendation:

Pursuant to the Plea Agreement, the parties have reached proposed Guideline calculations as follows:

| RECOMMENDED SENTENCING GUIDELINE CALCULATION | |
|---|---|
| **Count One (CR No. 23-441(GMM))** | |
| Base Offense Level: U.S.S.G. § 2Q1.3 | 6 |
| Special Offense Characteristic: U.S.S.G. § 2Q1.3(b)(4) – Discharge without a permit | +4 |
| Special Offense Characteristic: U.S.S.G. § 2Q1.3(b)(1)(B) – Discharge of a pollutant | +4 |
| Acceptance of Responsibility: U.S.S.G. § 3E1.1(a) | -2 |
| Zero-Point Offender pursuant to U.S.S.G. § 4C1.1(a) | -2 |
| Total Offense Level | 10 |

The Presentence Investigation Report ("PSR") filed by the United States Probation Office at Docket No. 39 and 41 has the same recommended a guideline calculation.

A.     Sentencing Recommendation of the United States

Following the Supreme Court case of United States v. Booker, 543 U.S. 220, (2005), a proper sentence is determined by whether a sentence is reasonable in light of the enumerated factors set forth in 18 U.S.C. § 3553(a). Factors particularly relevant in this case are the need for the sentence to: 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; and, 3) to protect the public from further crimes of the defendant.

*1) Seriousness of the Offense*

The crime committed by Defendant Rafael Carballo-Diaz and Nathaniel Hernandez-Claudio is more than a crime against the environment, it is a serious crime against the current and future residents of Puerto Rico. The wetland ecosystems in Puerto Rico are some of the most environmentally and societally beneficial in the country, which is why the JBNERR was designated as a public reserve. In particular, Defendant Rafael Carballo-Diaz decided to take those benefits from the public in the name of his own personal financial gain and short-term rental company.

Wetlands, and mangrove forest wetlands specifically, are arguably nature's most useful ecosystems. Mangroves are found exclusively in the intertidal zone between dry land and the sea within tropical and subtropical latitudes. Unlike virtually all other forests, mangrove forests thrive in salt water and low-oxygen soil, withstanding the daily rise and fall of the tide due to their dense tangle of elevated prop roots. These intricate root systems, which look like an unorganized mesh of tree limbs extending through the water column, are how mangrove forests provide so many benefits.

The dense tangle of roots holds soil in place, stabilizing coastlines that would otherwise be eroded by the tides and ocean currents. When mangroves are removed, the dry land has no barrier from the ocean, and nothing to keep ocean currents from washing away habitable land each year.[1] The root systems also reduce the inland impacts of tsunamis, storm surges, and flooding by as much as 66%.[2] Mangroves do this by physically slowing the size, speed, and energy of waves and wind velocity. After Hurricane Irma in 2017, researchers quantified the difference in damages between areas with mangroves and those where mangroves had been removed. Using insurance loss estimates, the study found that mangroves reduced damage losses by 25.5%, resulting in a savings of $1.5 billion in Florida alone, or about $7,500 per hectare during each hurricane.[3] In Salinas, Puerto Rico, where destructive storms are becoming more frequent and sea levels are rising, mangroves are the first line of defense.



Siddhartha Narayan et al., *Valuing the Flood Risk Reduction Benefits of Florida's Mangroves* (2019)

Figure 7: General schematic of mangrove effects on surge level. Surge is reduced behind mangroves reducing flooding to land and properties. Mangroves block surge thus water levels are higher on their seaward front; properties developed seaward of mangroves can be flooded more often in storms. Mangrove Forest and Surge Reduction not to scale.

The same intricate root systems protect native wildlife, acting as nurseries and safe habitat for countless species. Large predators are unable to successfully hunt within the mangroves, thus thousands of species of fish, birds, and crustaceans raise their young among the roots. Mollusk species, many of which require hard surfaces on which to attach, thrive in mangrove forests by

---

1 Steven Pennings et al., *Effects of Mangrove Cover on Coastal Erosion During a Hurricane*, 102 Ecol. Soc. Am. 219 (2021)
2 Anna Mcivor et. al, *Reduction of Wind and Swell Waves by Mangroves*, Nat. Coast. Prot. Ser. (2012)
3 Siddhartha Narayan et al., *Valuing the Flood Risk Reduction Benefits of Florida's Mangroves*, Nat. Cons. (2019), available at https://www.conservationgateway.org/pages/Florida-Mangroves.aspx.

attaching to the roots.

Mangroves also protect the sea from upland pollution. Mangrove roots are able to absorb agricultural and residential runoff such as phosphate, ammonia, and nitrate which would otherwise cause eutrophication (a reduction in oxygen levels that kills aquatic plants and wildlife). One study found that mangroves reduced nutrient pollution by more than 60%.[4] The mollusks which thrive on mangrove roots act as further filters, trapping pollutants and expelling clean seawater. The wave-breaking action of mangroves causes heavy metals to dissipate to the seafloor, where mangroves have a unique ability to absorb the metals. Recent studies have also found that mangrove wetland ecosystems sequester carbon from the atmosphere at a rate nearly ten times greater than mature tropical forests,[5] representing a major tool in the fight against climate change. These long term studies were, and continue to be, conducted within the Estuarine Research Reserve system, including the JBNERR.[6]

When mangrove wetlands are removed and replaced with concrete, fill, docks, and boat traffic the natural benefits disappear, and it will take significant time and effort to bring them back. It is a serious crime when one person decides that he can take all these natural benefits from the people and environment of Puerto Rico so that he can monetize the land and keep the profit as his own.

### 2) Public Protection

The public needs protection from crimes such as the defendants' because it is the public that will suffer. Mangrove wetland destruction has the greatest effect on those who live closest to

---

4 Orathai Jitthaisong et al., *Water Quality from Mangrove Forests*, 6 Mdn. App. Sci. No. 8 (2012).
5 Jean Brodeur et al., *Coastal Blue Carbon White Paper,* NOAA National Ocean Service, Jan. 2022, available at: https://oceanservice.noaa.gov/ecosystems/coastal-blue-carbon/
6 *Id*.

the JBNERR, and the impact ripples outwards from there. Residents of Las Mareas rely on stable shorelines, clean water, flood protection, and the reduced costs from natural disasters. Many residents also harvest fish and crustaceans from the local wetlands. Expanding outward, the area is used by the fishermen of Pozuelo, nearby boating clubs, and recreational fishermen throughout the region.[7] Puerto Rican school children learn about the unique ecosystems at the JBNERR educational visitor center during the school year and at free summer camps, and the area hosts scouting groups from throughout the island. The Reserve also hosts environmental festivals, educational workshops, and community group meetings. Puerto Ricans and tourists alike visit the Reserve's hiking trails, kayaking paths, and archeological sites. At an even wider scale, a key goal of the JBNERR is research, monitoring, and education. Researchers from across the globe conduct short and long-term studies on sea level changes, water quality impacts, wetland biology, and more. When individuals artificially change the habitat, releasing pollutants into the water and removing the natural ecology, the research can become tainted and public benefit is reduced.

When Defendant Carballo-Diaz destroyed a public, protected space, for financial gain, he also damaged the interests of the local community and all residents of Puerto Rico. By sentencing the Defendant Carballo-Diaz to a term of imprisonment as requested by the government, the Court can emphasize the seriousness of this offense, especially to those who seek to gain financially from the environmental harm they caused. The sentence will also help protect the public from individuals removing or misappropriating resources that are rightfully the property of all.

### 3) *Promote Respect for the Law and Provide Adequate Deterrence*

A sentence of twelve (12) months' of imprisonment for Carballo-Diaz will "promote

---

[7] Jobos Bay National Estuarine Research Reserve Management Plan 2017-2022, available at: https://coast.noaa.gov/nerrs/reserves/jobos-bay.html.

respect for the law," "provide just punishment," 18 U.S.C. § 3553(a)(2)(A), and "afford adequate deterrence to criminal conduct" by the defendant and other potential offenders. Id. § 3553(a)(2)(B).

Defendant Carballo-Diaz has shown that he does not respect the law, and a sentence of imprisonment is necessary to deter him from future opportunistic crimes. Carballo-Diaz took the property of others and turned it to his exclusive profit. Over the course of years, he displayed no hesitation in violating the law for his own financial advantage.

Even if this Court could be sure that Defendant Carballo-Diaz will not continue criminal activities, a significant sentence is needed "to afford adequate deterrence to criminal conduct" by other potential offenders. 18 U.S.C. § 3553(a)(2)(B). The islands of Puerto Rico are rich in wetlands, mangrove forests and marine resources, all of which are held in trust for the benefit of all. If a person can confiscate those public resources for private profit with minimal consequence, then there is little to stop others from doing the same. The government's suggested sentence can force other would-be violators to evaluate the risk and consequences associated with breaking federal environmental laws despite the potential for personal gain.

## V.     Conclusion

Given the § 3553(a) factors, each defendant's background, and the facts pertaining to these offenses, the United States submits that a sentence of **twelve (12) months of imprisonment, three (3) years of supervised release, and a fine** is appropriate for Defendant Rafael Carballo-Diaz and a sentence of probation is appropriate for Defendant Nathaniel Hernandez-Claudio. This is consistent with each Plea Agreement and the United States Sentencing Guidelines. Not only would such these sentences be within the applicable guideline calculation, they would reflect the seriousness of the offenses, would afford adequate deterrence to criminal conduct, and would

reasonably protect the public from further crimes of the defendants.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of September, 2024.

W. Stephen Muldrow
UNITED STATES ATTORNEY

s/ Seth A. Erbe
**Seth A. Erbe**
Assistant U.S. Attorney
Chief, Financial Fraud &
Public Corruption Section
USDC-PR No. 220807
seth.a.erbe@usdoj.gov
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, PR 00918
Tel. (787) 766-5656

**CERTIFICATE OF SERVICE**:

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                                        **W. STEPHEN MULDROW**
                                        United States Attorney

                                        *s/Seth A. Erbe*
                                        **SETH A. ERBE**
                                        Assistant United States Attorney
                                        USDC-PR No. 220807

United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, PR 00918
Tel. (787) 766-5656
Fax: (787) 766-5398
seth.a.erbe@usdoj.gov